STATE of Alaska, Petitioner,

v.

John **SPIETZ**, Respondent.

No. 2096.

Supreme Court of Alaska.

Feb. 7, 1975.

Norman C. Gorsuch, Atty. Gen., Daniel W. Hickey, Dist. Atty., Juneau, for petitioner.

Lawrence T. Feeney, Faulkner, Banfield, Doogan, Gross & Holmes, Juneau, for respondent.

Before RABINOWITZ, C. J., and CONNOR, ERWIN and FITZGERALD, JJ.

FITZGERALD, Justice.

We take review in this case to decide whether an order by the trial court suppressing evidence was proper under the circumstances.

Respondent John Spietz was indicted for possession of marijuana with intent to sell.[1] His pre-trial motion to suppress was granted[2] and the state of Alaska petitioned for review.[3] Since the order of the trial court would likely result in terminating the prosecution[4] and involves a controlling question of law,[5] review is appropriate.

The facts are not seriously disputed and appear in the memorandum decision of the trial court. On the evening of June 26, 1973, several state troopers together with officers of the Juneau police department approached the Spietz residence intending to serve him with a warrant of arrest for assault with a dangerous weapon. The residence is a small quonset containing a

---

1. AS 17.12.010 prohibits the possession or sale of a depressant, hallucinogenic, or stimulant drug.

2. Alaska R.Crim.P. 37(c).

3. "[T]he state can invoke our discretionary review jurisdiction in criminal cases where the matter sought to be reviewed involves a non-final order or decision of the superior court." State v. Browder, 486 P.2d 925, 931 (Alaska 1971). See State v. Davenport, 510 P.2d 78, 80 (Alaska 1973).

4. Alaska R.App.P. 23(c)(1) allows the filing of a petition for review when an order affects a substantial right which " . . . in effect terminates the proceeding or action and prevents a final judgment therein . . . ."

5. Alaska R.App.P. 23(d) permits the filing of a petition for review when a controlling question of law is involved.

kitchen which is separated from a living room by a counter, a back bedroom a bathroom and a partially enclosed porch. Entrance to the quonset is through a doorway from the porch into the kitchen.

■ Investigator Zaruba and Officer O'Brien entered the porch at the front of the residence while two other officers were posted outside.[6] Investigator Zaruba knocked on the door. Spietz opened the door and stepped out onto the porch. He was immediately arrested for assault with a deadly weapon, placed against the outside wall, and subjected to a pat-down search for weapons. The entrance doorway remained open. As Investigator Zaruba was conducting a pat-down search for weapons, he noticed another person inside the quonset. The officer promptly ordered the person to step out onto the porch. In this brief interval Zaruba observed an uncovered galvanized metal tub on the floor a short distance inside the open doorway. The tub appeared to contain a green vegetable-like substance which Investigator Zaruba, who had extensive experience in the investigation of narcotics and drugs, believed to be marijuana. Zaruba, followed by O'Brien, entered the residence and seized the tub of marijuana. More tubs and a number of bags of marijuana were then observed in plain view in the living room. Later in the day an extensive, warrantless search was made on the premises and additional incriminating evidence was discovered. It is conceded by the state that any evidence obtained as a result of the later expansive search was properly suppressed. We are only concerned now with the evidence within the officers' plain view immediately following the arrest of Spietz on the warrant.

The trial court found that the observation of evidence or contraband in plain

view failed to justify the entry through the front doorway into the Spietz residence without a search warrant. The court reasoned that the police were required to first obtain a search warrant or otherwise to establish exigent circumstances before legal entry could be made into the house. Hence, the trial judge concluded that the seizure was unlawful and the evidence subject to suppression.

■■ The starting point for consideration of the issues before this court on appeal is the question of whether plain view alone justifies entry into a house and seizure of evidence. The United States Supreme Court stated in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 564 (1971):

> . . . plain view *alone* is never enough to justify the warrantless seizure of evidence.[7]

Plain view alone will not justify an entry into a private residence because plain view is not in itself an exception to the warrant requirement.[8] Plain view of evidence of a crime merely furnishes probable cause to believe that a crime has been committed.[9] Probable cause in itself does not justify a warrantless search and seizure of evidence, since absent exigent circumstances a search warrant must first be obtained from an impartial judicial officer.[10]

■ Justice Stewart in the *Coolidge* opinion explained that for a plain view seizure to be valid, the first prerequisite is a justifiable prior intrusion. An intrusion can be justified by a valid warrant or by some recognized exception to the warrant requirement. The initial justification for an intrusion is not the plain view of incriminating evidence because the plain

---

6. After the arrest occurred, a fifth officer arrived on the scene of the arrest.

7. 403 U.S. at 468, 91 S.Ct. at 2039, 29 L.Ed. 2d at 584.

8. *Id.* at 466, 91 S.Ct. 2022, 29 L.Ed.2d at 583.

9. Brown v. State, 15 Md.App. 584, 292 A.2d 762, 774 (1972).

10. Coolidge v. New Hampshire, 403 U.S. 443, 468, 91 S.Ct. 2022, 29 L.Ed.2d 564, 584 (1971).

view doctrine merely "serves to supplement the prior justification." [11]

■ Thus, in the instant case the burden rests upon the state to show that the warrantless intrusion into the Spietz house falls under one of the exceptions to the warrant requirement.[12] The exceptions which could justify the entry in the instant case are: (1) search incident to an arrest, (2) exigent circumstances involving possible destruction of evidence, (3) a protective search for accomplices.

■■ the state contends that the entry into the Spietz residence and seizure of the tub were justified by the exception to the warrant requirement permitting a search incident to arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), strictly limits the area which may be searched incident to arrest. The search must be limited to the arrestee's person and the area within his immediate control, which is the area from which he might gain possession of a weapon or destructible evidence.[13] The trial court found that under the limitations set forth in *Chimel,* the officers' intrusion into the house was not justified under the search incident to arrest exception. Both Spietz and the other person were already in custody on the porch outside the house. The state does not contend that the area just inside the door was within the arrestees' immediate control so that they might reach inside for weapons or destructible evidence. Search incident to arrest does not here constitute a valid prior intrusion into the house.

■ The state next argues that possible destruction of the marijuana constituted exigent circumstances justifying the warrantless intrusion into the house. The trial court found that the officers did not have a reasonable belief that the marijuana was about to be destroyed or removed. The trial court also found that the state failed to demonstrate any great degree of urgency. Prior to their arrest Spietz and the other man had not known that they were being pursued. When the two men were under arrest on the porch, it was impossible for them to destroy the evidence. Moreover, there was ample time to secure a search warrant. With five officers present, several officers could have removed the arrestees and obtained a search warrant while one or more other officers guarded the premises. Exigent circum-

11. *Id.* at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583. The second requirement is that the plain view discovery must be inadvertent. *Id.* at 469, 91 S.Ct. 2022, 29 L.Ed.2d at 585.

For a good discussion of the plain view doctrine in general see Brown v. State, footnote 9 *supra,* which explains:

It becomes apparent that the "Plain View" Doctrine comprehends only one variety of the ocular "plain view's." It does not contemplate the non-intrusion visual observation, such as where evidence is in "open view" and therefore seizable in a "constitutionally non-protected area." See Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898, *supra,* wherein evidence was seen and was validly seized in an "open field," notwithstanding police trespass upon the field. Nor does the "Plain View" Doctrine contemplate the pre-intrusion visual observation of evidence in "open view" inside a "constitutionally protected area," such as a house, garage, automobile, etc., from a vantage point outside the "constitutionally protected area." Here the valid visual observation simply furnishes probable cause for 1) the issuance of a warrant,

Steele v. United States, 267 U.S. 498, 45 S. Ct. 414, 69 L.Ed. 757 (1925); or 2) the warrantless entry of a vehicle or vessel, provided exigent circumstances are also present, United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202, *supra;* Scales v. State, 13 Md.App. 474, 284 A.2d 45; or 3) the warrantless entry to effect an arrest for a crime being committed in the officer's presence, *Agnello,* [Agnello v. United States] 269 U.S. [20] at 30, 46 S.Ct. 4, 70 L.Ed. 145; Griffin v. State, 200 Md. 569, 92 A.2d 743. As a non-search, the visual observation itself is legitimate; but it may never, standing alone, justify an intrusion. Taylor v. United States, 286 U. S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932). Thus, the formal "Plain View" Doctrine, as announced in *Coolidge,* is exclusively a post-intrusion phenomenon. *Id.* 292 A.2d at 774.

12. *Id.* 403 U.S. at 454-455, 91 S.Ct. 2022, 29 L.Ed.2d at 576. Erickson v. State, 507 P. 2d 508, 514 (Alaska 1973).

13. 395 U.S. at 763, 89 S.Ct. 2034, 23 L.Ed.2d at 694.

stances did not justify the warrantless intrusion and seizure in the instant case.

■■■ The state finally contends that the warrantless intrusion into the house can be sustained on the protective search exception to the warrant requirement upheld in Mattern v. State, 500 P.2d 228 (Alaska 1972). The protective search exception requires that the officers have reasonable cause to believe that their safety is in danger. The trial court in applying *Mattern* found that the state had failed to meet its burden of proof. The one-story quonset was a small residence. One of the investigating officers was familiar with the premises. The open doorway provided a substantial view into the house. Although there was a peripheral area blocked from the officers' vision, the state failed to demonstrate a factual basis for a reasonable belief that additional suspects were present and posed a threat to the safety of the arresting officers. Thus, the state has not carried its burden of demonstrating that the warrantless intrusion into the Spietz residence was justified under any of the exceptions to the warrant requirement possibly applicable in this case.

■■■ The home has traditionally been afforded special protection under the Fourth Amendment of the United States Constitution and under the Alaska constitution.[14] A door of the home represents a firm constitutional barrier whether or not it is open. The front doorway to the Spietz residence, although open, was a constitutional barrier to any search or seizure not based either on a valid warrant or on one of the narrowly defined exceptions. The intrusion into the privacy of Spietz's person by his arrest and the search incident to that arrest outside the dwelling did not change the protected status of the house.[15] Plain view alone could not justify the warrantless entry through the doorway into the constitutionally protected area of the Spietz house.[16]

We conclude that the trial court's findings in this case were not clearly erroneous. We therefore affirm the suppression order.

BOOCHEVER, J., not participating.

ERWIN, Justice (concurring).

I concur with the result reached by the Court in this case, and am likewise in complete agreement with the analysis set forth in the majority opinion with regard to the exceptions to the warrant requirement which would be required to justify a warrantless seizure of the marijuana observed in the Spietz house. I am, however, of the opinion that a more thorough and explicit discussion of the parameters of the "Plain View" doctrine than that offered by the majority is necessary to insure a full understanding of why that doctrine does not permit the seizure in question.

The decision announced by this Court today, insofar as it is concluded that no warrantless seizure under the aegis of the plain view doctrine is proper under the factual circumstances of this case, does not represent any new extension of the rule enunciated in *Coolidge*. Nor is it in any way inconsistent with the language and tenor of past discussions of the doctrine as appear in such cases as Erickson v. State, 507 P.2d 508, 513–516 (Alaska 1973). In view, however, of the complexities and sometimes confusing convolutions encountered in dealing with the concept of plain view seizures, and lest this decision be viewed as a departure from established precedent, I feel that valuable guidance may be found in the following excellent analysis set forth in Brown v. State, 15 Md.App. 584, 292 A.2d 762 (1972), which I would hereby incorporate in toto to more clearly explicate our position:

In enunciating the rationale for the "Plain View" exception, *Coolidge* sets out "the two distinct constitutional pro-

14. *See, e. g.*, Ferguson v. State, 488 P.2d 1032 (Alaska 1971).

15. *Cf.* Vale v. Louisiana, 399 U.S. 30, 90 S. Ct. 1969, 26 L.Ed.2d 409 (1970).

16. *See* Brown v. State, 15 Md.App. 584, 292 A.2d 762 (1972).

tections served by the warrant requirement." It protects against *"any* intrusion in the way of search or seizure" which is not justified by "a careful prior determination of necessity." It then mandates that even "those searches deemed necessary should be as limited as possible." It reasons that the "Plain-View" exception is not in conflict with the first objective because the plain view does not occur until after the valid intrusion has already been made and its purpose is already in progress. It then reasons that the plain view exception is consistent with the second objective "since it does not convert the search into a general or exploratory one."

It becomes apparent that the "Plain View" Doctrine comprehends only one variety of the ocular "plain view's." It does not contemplate the non-intrusion visual observation, such as where evidence is in "open view" and therefore seizable in a "constitutionally non-protected area." See Hester v. United States, [265 U.S. 57, 44 S.Ct. 445, 68 L. Ed. 898 (1924)], wherein evidence was seen and was validly seized in an "open field," notwithstanding police trespass upon the field. *Nor does the "Plain View" Doctrine contemplate the pre-intrusion visual observation of evidence in "open view" inside a "constitutionally protected area," such as a house, garage, automobile, etc., from a vantage point outside the "constitutionally protected area." Here the valid visual observation simply furnishes probable cause* for (1) the issuance of a warrant, Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925); or (2) the warrantless entry of a vehicle or vessel, provided exigent circumstances are also present, United States v. Lee, [274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927)]; Scales v. State, 13 Md.App. 474, 284 A. 2d 45; or (3) the warrantless entry to effect an arrest for a crime being committed in the officer's presence, *Agnello*, [Agnello v. United States], 269 U.S. 20,

at 30, 46 S.Ct. 4, 70 L.Ed. 145; Griffin v. State, 200 Md. 569, 92 A.2d 743. As a nonsearch, the visual observation itself is legitimate; but it may never, standing alone, justify an intrusion. Taylor v. United States, 286 U.S. 1, 52 S.Ct. 466, 76 L.Ed. 951 (1932). Thus, the formal "Plain View" Doctrine, as announced in *Coolidge,* is exclusively a post-intrusion phenomenon.

The chameleon-like quality of the phrase "plain view" stems from its loose employment to describe these visually similar but legally distinct situations. Although they share the common denominator of a nonsearching, sighting of evidence in "open view," the non-intrusion observation needs no further justification for a seizure; the pre-intrusion observation does need some additional legal predicate for the intrusion necessary to effect the seizure; and the post-intrusion—or truly "Plain View"—observation has already validly surmounted the intrusion hurdle.

292 A.2d at 774–775 (emphasis added) (footnote deleted).

In the instant case we are dealing with the situation described by *Brown, supra,* as a

pre-intrusion visual observation of evidence in "open view" inside a "constitutionally protected area," such as a house . . . ., from a vantage point outside the "constitutionally protected area." . . . [which] simply furnishes probable cause for [the issuance of a warrant or an entry and seizure under one of the recognized exceptions to the warrant requirement].

Thus, as is pointed out in the majority opinion, the door of the Spietz residence operates for purposes of the respondent's fourth amendment rights as the threshold of his "constitutionally protected area," the reasonable boundary of his "expectation of privacy," and, absent circumstances giving rise to an exception to the requirement, entry therein to seize items in plain view must be by a warrant.