NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| LANOLAN ANDERSON, | Court of Appeals No. A-12294 |
| Appellant, | Trial Court No. 3AN-09-05898 CR |
| v. | |
| STATE OF ALASKA, | O P I N I O N |
| Appellee. | No. 2646 — June 7, 2019 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack W. Smith, Judge.

Appearances: Krista Maciolek, Law Office of Krista Maciolek, Inc., Palmer, under contract with the Office of Public Advocacy, Anchorage, for the Appellant. Michal Stryszak, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard and Wollenberg, Judges.

Judge WOLLENBERG.

Lanolan Anderson was convicted of three counts of first-degree assault. The superior court sentenced him to a composite term of 20 years to serve.

On appeal, Anderson raises several claims. First, Anderson argues that the court erred in failing to suppress his clothing, which the police seized without a warrant.

Second, Anderson argues that the court erred in instructing the jury regarding a witness's unavailability. Third, Anderson argues that the court erred in rejecting two of his proposed mitigating factors and by giving insufficient weight to a third mitigating factor. Finally, Anderson argues that the court improperly found that Anderson had two prior felony convictions, rather than one, when determining the applicable presumptive sentencing range.

For the reasons explained in this decision, we reject Anderson's claims, and we affirm Anderson's convictions and his sentence.

*Underlying facts and proceedings*

In May 2009, shortly before midnight, Anderson kicked in the front door of a residence in Anchorage, and he and two accomplices (all three armed with handguns) entered the residence. Once inside, Anderson's accomplices shot two of the occupants and pistol-whipped a third. Anderson was also shot during this incident.

All three occupants of the residence required medical treatment for their wounds, and two of them were taken to Providence Medical Center. Because Anderson was wounded, he contacted a friend, and this friend also took him to the emergency room at Providence.

In response to the report of the shooting, Anchorage Police Officer Jean Mills went to Providence, where she expected to meet and interview the victims of the alleged home invasion. Mills arrived at the hospital just as Anderson got out of his friend's vehicle, and Mills could see that Anderson was bleeding from a wound to his abdomen. From this, Mills assumed that Anderson was one of the victims.

Mills accompanied Anderson into the emergency room and stayed there as the hospital staff treated him. Mills took photographs of Anderson as the medical staff worked on him, and she observed a gunshot wound to Anderson's left side when the staff

cut off his clothing. Anderson at first confirmed that he had been at the residence where the home invasion occurred, but he later changed his story, telling Mills that he was in a grocery store parking lot when he was shot.

Another officer then informed Mills that Anderson was a possible suspect in the home invasion. After some further questioning, Mills seized all of the clothing that the medical staff had removed from Anderson, including his shoes.

The police subsequently compared a photograph of the soles of Anderson's shoes to photographs of shoe impressions left on the kicked-in front door of the residence, and they appeared to match. At trial, a witness from the crime laboratory testified to the match between Anderson's shoes and the shoe impressions on the front door of the residence. Crime lab representatives also testified that there was a blood stain on one of the shoes and that one of the victims could not be excluded as a source of the DNA found in the stain.

Anderson and his two accomplices were charged with numerous felonies, including three counts of first-degree assault (one for each alleged victim).[1] Prior to trial, Anderson filed a motion to suppress, arguing that the police unconstitutionally seized his clothing from the hospital emergency room. Anderson asked the court to suppress his clothing, as well as photographs of the clothing and the forensic analysis comparing the soles of his shoes to shoeprints recovered from the crime scene.

The parties agreed to forgo an evidentiary hearing and to have the court decide the motion based on Officer Mills's police report. Based on the police report, the superior court found that the seizure of Anderson's clothing was justified by the plain view exception to the warrant requirement.

---

[1] AS 11.41.200(a)(1).

Anderson and his co-defendants were tried together. At trial, Anderson argued that the alleged victims had actually assaulted him.

The jury found Anderson guilty of the three first-degree assaults, but the jury was unable to reach verdicts on the remaining counts, including counts of first-degree robbery and conspiracy to commit first-degree robbery. Ultimately, the State dismissed the remaining counts against Anderson, and his case proceeded to sentencing on the three assault convictions. (The jury could not reach verdicts as to Anderson's co-defendants, and their cases were later resolved without a trial.)

At Anderson's sentencing, the superior court rejected Anderson's two proposed mitigators — that he played a minor role in the offenses, and that his conduct was the result of serious provocation from the victims.[2] But the superior court did find that one of the assaults qualified as among the least serious conduct within the definition of the offense.[3] Anderson conceded one aggravating factor — that he had a history of aggravated assaultive behavior.[4]

Finally, over Anderson's objection, the superior court found that Anderson had two prior felony convictions for purposes of determining the applicable presumptive sentencing range. Because the court found that Anderson was a third felony offender, he was subject to a presumptive sentencing range of 15 to 20 years for each first-degree assault conviction.[5] The court sentenced Anderson to a term of 15 years on each count. The court imposed some of this time consecutively, giving Anderson a composite sentence of 20 years, with no time suspended.

---

[2] AS 12.55.155(d)(2) and AS 12.55.155(d)(6), respectively.

[3] AS 12.55.155(d)(9).

[4] AS 12.55.155(c)(8).

[5] Former AS 12.55.125(c)(4) (pre-2016 version).

Anderson now appeals.

*Why we affirm the superior court's denial of Anderson's suppression motion*

Prior to trial, Anderson moved to suppress his clothing, arguing that the State had no justification for seizing the clothing without a warrant. The parties agreed that the superior court could decide this motion based solely on Officer Mills's police report and the parties' briefing — that is, without holding an evidentiary hearing.

Based on the police report, the court concluded that the seizure of the evidence was lawful because the evidence was in plain view. More specifically, the court found that (1) Officer Mills was in a place where she was lawfully entitled to be; (2) the discovery of Anderson's clothing was inadvertent, since Anderson arrived at the hospital while Mills was waiting for the victims of the home invasion; and (3) the evidentiary relevance of the clothing was immediately apparent.[6]

Before we analyze the superior court's ruling, we must discuss the two meanings of the phrase "plain view."

In his leading treatise on search and seizure law, Professor Wayne R. LaFave points out that the phrase "plain view" is actually used in two distinct Fourth Amendment contexts.[7]

---

[6]   *See Ahvakana v. State*, 283 P.3d 1284, 1288 (Alaska App. 2012) (citing *Reeves v. State*, 599 P.2d 727, 738 (Alaska 1979)) (noting the three requirements of the plain view doctrine under Alaska law).

[7]   1 Wayne R. LaFave, *Search and Seizure* § 2.2(a), at 597-604 (5th ed. 2012).

The first context, known as the "plain view doctrine," originated in Justice Stewart's plurality opinion in *Coolidge v. New Hampshire*.[8] This doctrine "refers exclusively to the legal justification . . . for the seizure of evidence which has not been particularly described in a warrant and which is inadvertently spotted in the course of a constitutional search already in progress or in the course of an otherwise justifiable intrusion into a constitutionally protected area."[9]

But courts also use the phrase "plain view" in a second context: to describe the situation "in which there has been no Fourth Amendment search at all," and where "an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area."[10] In this second context, where the observation of the evidence is *not* the result of a Fourth Amendment intrusion, "the observation is lawful without the necessity of establishing either pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement."[11]

As Professor LaFave emphasizes, this second meaning of "plain view" "involves no intrusion covered by the Fourth Amendment [and] need not meet the three

---

[8]  *Coolidge v. New Hampshire*, 403 U.S. 443, 465-71 (1971).

[9]  *Scales v. State*, 284 A.2d 45, 47 n.1 (Md. App. 1971); *see also State v. Spietz*, 531 P.2d 521, 524 n.11 (Alaska 1975) (recognizing that "the formal 'Plain View' Doctrine, as announced in *Coolidge*, is exclusively a post-intrusion phenomenon") (quoting *Brown v. State*, 292 A.2d 762, 774 (Md. App. 1972)).

[10]  LaFave, *Search and Seizure* § 2.2(a), at 599.

[11]  *Id.* at 600; *see also Spietz*, 531 P.2d at 524 n.11 (noting that the "Plain View" Doctrine "does not contemplate the non-intrusion visual observation, such as where evidence is in 'open view' and therefore seizable in a 'constitutionally non-protected area'") (quoting *Brown*, 292 A.2d at 774).

requirements set out in the *Coolidge* plurality opinion."[12]  For this reason, courts sometimes describe this second context as "open view" rather than "plain view," to avoid any ambiguity.[13]

When Anderson litigated his suppression motion in the trial court, the State relied on the *Coolidge* plain view doctrine to justify the seizure of Anderson's clothing. But Anderson argued that the *Coolidge* plain view doctrine did not apply to his case.

Anderson took the position that Officer Mills was lawfully in his hospital room, and thus the seizure of Anderson's clothing was *not* the result of a police intrusion into a constitutionally protected space.  Rather, Anderson contended, the only Fourth Amendment violation that the police committed was the *seizure* of his clothing.

In other words, Anderson essentially argued that his case fell within the second category of cases described by Professor LaFave — situations where the police, acting without a warrant, seize evidence that is in open view.

---

[12]  LaFave, *Search and Seizure* § 2.2(a), at 601; *see also McGee v. State*, 614 P.2d 800, 806 n.12 (Alaska 1980) ("[I]n non-search situations . . . , the requirement that discovery [of the evidence seized] be inadvertent is inapplicable.  The inadvertent discovery requirement assures that police will not intentionally expand the permissible scope of an otherwise lawful search.  Where there is no search, there is, a fortiori, no danger that the police will exceed their permissible limits.").

[13]  *See* LaFave, *Search and Seizure* § 2.2(a), at 599 (noting that this type of plain view is perhaps "deserving of a different label so as to avoid confusion of it with that discussed in *Coolidge*"); *State v. Kaaheena*, 575 P.2d 462, 466 (Haw. 1978) (distinguishing "[t]he 'open view' doctrine" from the "visually similar, but legally distinct, 'plain view' doctrine"); *Scales*, 284 A.2d at 47 n.1 (stating that "[n]eedless confusion is frequently engendered by the employment in many opinions of the same phrase — 'in plain view' — to describe two visually similar but legally distinct situations[,]" and that it would be preferable to use "some alternative phraseology such as 'clearly visible,' 'readily observable,' 'open to public gaze,' etc.").

"Open view" seizures are not necessarily lawful. While there may have been no unconstitutional *search*, the State must still establish that the *seizure* of the evidence was justified. It is true that the seizure of an article that is in open view does not involve any invasion of privacy, but the seizure does invade the owner's possessory interest in the item.[14] As Professor LaFave explains, "the seizure itself constitutes an interference with 'effects' protected by the Fourth Amendment."[15] Thus, in the absence of a search warrant, "some recognized ground for [a] warrantless seizure . . . must be present."[16]

Here, as part of the superior court's ruling on Anderson's suppression motion, the court found that when Officer Mills seized Anderson's clothing, the evidentiary relevance of this clothing was "immediately apparent." In this context, the phrase "immediately apparent" refers to situations where there is probable cause to believe that the object is evidence of criminal activity.[17] Thus, when Anderson and the

---

[14] *Horton v. California*, 496 U.S. 128, 133-34 (1990).

[15] LaFave, *Search and Seizure* § 2.2(a), at 604.

[16] *Id.*; *see also Soldal v. Cook County*, 506 U.S. 56, 66 (1992) (holding that, "the absence of a privacy interest notwithstanding, '[a] seizure of the article . . . would obviously invade the owner's possessory interest'" and implicate the Fourth Amendment) (quoting *Horton*, 496 U.S. at 134); *Sheffield v. United States*, 111 A.3d 611, 619 (D.C. 2015) ("[T]he Fourth Amendment protects against unreasonable seizures of property in which the individual has a possessory interest, even if a privacy or liberty interest is not at issue."); *Jones v. State*, 648 So.2d 669, 675 (Fla. 1994) ("[E]ven if we were to find that Jones' privacy interests were in no way compromised, there clearly was a meaningful interference with his constitutionally protected possessory rights when his effects were seized without a warrant.").

[17] *United States v. Hamie*, 165 F.3d 80, 83 (1st Cir. 1999); *see also Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (holding that the police must have probable cause to believe an item is evidence of a crime or contraband when seizing the item pursuant to the "plain view" doctrine); *United States v. Davis*, 690 F.3d 226, 237 (4th Cir. 2012) (collecting cases stating

(continued...)

State litigated whether the evidentiary relevance of Anderson's clothing was "immediately apparent," they effectively litigated whether the police had probable cause to believe that Anderson's clothing was evidence of a crime. And when the superior court found that the relevance of Anderson's clothing was "immediately apparent" to Officer Mills, the court in essence found that Mills had probable cause to believe that the clothing was evidence of the home invasion and shootings.

Based on the record before us, we uphold the superior court's finding of probable cause. Indeed, the record shows that Mills had probable cause to believe that Anderson's clothing constituted evidence of a crime even before she and Anderson entered the hospital.

Mills first saw Anderson's clothing while she was waiting for the victims of the shooting to arrive at the hospital. As Anderson exited his friend's vehicle, Mills saw that Anderson was wounded in the abdomen and that he was bleeding through his clothing. At that time, Mills mistakenly believed that Anderson was a victim of the home invasion. But regardless of whether Anderson was a victim or a suspect, the evidentiary relevance of his blood-stained clothing was immediately apparent.

(Mills understandably did not seize Anderson's clothing until after he was being treated in the hospital. And by then, Mills believed that Anderson was a suspect.)

Because the police had probable cause to believe that Anderson's clothing was evidence of criminal activity, the open view seizure of Anderson's clothing was lawful. As the United States Supreme Court has said, it is "well settled" that the seizure

---

[17] (...continued)
that "an item need not itself be contraband before it has an 'incriminating nature,' but instead, an item need only be evidence of a crime"); *McGee*, 614 P.2d at 806 ("The Fourth Amendment . . . requires that before seizing an item in plain view, the police must have probable cause to believe that the item seized is a fruit, instrumentality or evidence of a crime.").

of property in open view "involves no invasion of privacy and is presumptively reasonable [if] there is probable cause to associate the property with criminal activity."[18] In other words, probable cause to believe that an object is evidence of a crime is a recognized ground for a warrantless seizure, as long as seizing the object does not require any additional Fourth Amendment intrusion.[19]

Other courts have upheld the warrantless seizure of a suspect's clothing under similar circumstances.[20]

---

[18] *Payton v. New York*, 445 U.S. 573, 586-87 (1980); *see also Texas v. Brown*, 460 U.S. 730, 748 (1983) (Stevens, J., concurring) ("[I]f an officer has probable cause to believe that a publicly situated item is associated with criminal activity, the interest in possession is outweighed by the risk that such an item might disappear or be put to its intended use before a warrant could be obtained. The officer may therefore seize it without a warrant."); *Brown v. State*, 292 A.2d 762, 774 (Md. App. 1972) (noting that the seizure of evidence when there has been no prior intrusion into a constitutionally-protected zone is permissible without further justification), *cited in State v. Spietz*, 531 P.2d 521, 524 n.11 (Alaska 1975) & *id.* at 525-26 (Erwin, J., concurring).

[19] *See State v. Ricks*, 816 P.2d 125, 125 (Alaska 1991) (distinguishing between the justified warrantless seizure of a jacket when police had probable cause to believe it contained contraband and the subsequent search of the jacket, for which the police needed a warrant); *cf. Moore v. State*, 372 P.3d 922, 926 (Alaska App. 2016) (noting that "[w]hen the police have probable cause to believe that an article of luggage contains evidence of a crime, and when there are no exigent circumstances authorizing an immediate warrantless search, the police are authorized to seize the luggage (but not search it) and to carry the luggage away for safe-keeping while they apply for a search warrant").

[20] *Compare Davis*, 690 F.3d at 233-38 (upholding the warrantless seizure of clothing from the hospital when it was undisputed that the officer was lawfully present in the hospital room and had lawful access to the clothing, and it was apparent that the patient had been shot in the leg and that his clothing was beneath his bed); *Chavis v. Wainwright*, 488 F.2d 1077, 1078 (5th Cir. 1973) (upholding the seizure of clothing from the foot of the stretcher at the hospital); *Sheffield*, 111 A.3d at 618-21 (upholding the seizure of clothing from the defendant's hospital room); *People v. Miller*, 311 N.E.2d 179, 180 (Ill. App. 1974)

(continued...)

On appeal, Anderson argues a different Fourth Amendment theory for the suppression of his clothing. He now contends that it was unlawful for the police to enter his hospital room. Thus, Anderson argues, his case falls within the *first* category of plain view cases described by Professor LaFave — cases where the *Coolidge* plain view doctrine applies because the discovery of the evidence was preceded by a Fourth Amendment *search*.

But as we have explained, when Anderson's suppression motion was litigated in the trial court, Anderson did not argue that the hospital room was a constitutionally protected space, nor did he argue that the police entered that space

---

[20] (...continued)

(upholding the seizure of burned clothing remnants that the officer saw being removed at the hospital from the defendant, who was suspected of arson); *Floyd v. State*, 330 A.2d 677, 679 (Md. App. 1975) (holding that the police could validly seize, as evidence of a crime, bloody clothing cut from the defendant's body prior to his treatment for gunshot wounds), *with People v. Jordan*, 468 N.W.2d 294, 299-300 (Mich. App. 1991) (holding that the seizure of a defendant's clothing from the hospital where he was undergoing surgery was impermissible because the clothing was "neither obviously incriminating or contraband"); *People v. Sanders*, 47 N.E.3d 770, 777-78 (N.Y. 2016) (holding that the seizure of the defendant's clothing from the hospital was not supported by probable cause; the defendant, who had been shot, was dressed in different clothing by the time the officer arrived, and there was no evidence that the officer knew that the defendant's wounds were located in an area of the body that would be covered by clothing).

*See also* 3 Wayne R. LaFave, *Search and Seizure* § 5.5(c), at 321 (5th ed. 2012) (noting that "a plain view seizure of personal effects of evidentiary value may also occur, for example, when those effects are viewed on or near the defendant's person rather than within premises or a vehicle in which he has a privacy interest, as where clothing of an injured person at a hospital is seized because it constitutes evidence of a crime committed on or by that person").

unlawfully.  Under our supreme court's decision in *Moreau v. State*, Anderson cannot use his appeal to raise new theories for suppression of the evidence.[21]

For these reasons, we affirm the superior court's denial of Anderson's suppression motion.

*Anderson's claim regarding Jury Instruction No. 9B*

At trial, outside the presence of the jury, one of the alleged victims invoked his Fifth Amendment right against self-incrimination.  The State declined to grant this witness immunity, and the superior court ruled that the witness was unavailable to testify.  Over Anderson's objection, the court later instructed the jury that this witness was unavailable to testify and that the jury should not speculate on the reason for his unavailability, or speculate as to what he would have said had he testified.

On appeal, Anderson argues that the court's instruction was improper.  But Anderson does not meaningfully explain how this instruction was erroneous, nor does he explain how the error, if any, prejudiced him.

Alaska Evidence Rule 512(a) declares that a claim of privilege is not a "proper subject of comment by judge or counsel," and that no inference may be drawn from the exercise of an evidentiary privilege.  In addition, Evidence Rule 512(c) provides that "[u]pon request, any party against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom."  Thus, it appears that, to the extent the jury might have drawn an adverse

---

[21]  *Moreau v. State*, 588 P.2d 275, 280 (Alaska 1978).

inference from the witness's claim of privilege, the State was entitled to this instruction, even over Anderson's objection.[22]

In an unpublished opinion, *Hesch v. State,* we noted that there is a split among jurisdictions as to whether a neutralizing instruction is required when a witness invokes a privilege outside the presence of the jury and, as a result, the jurors are unaware that the privilege has been asserted.[23] In *Hesch*, we declined to resolve whether Alaska Evidence Rule 512(c) entitles a party to the instruction even when the privilege is invoked outside the presence of the jury because, given the split in authority, the judge's failure to give such an instruction did not constitute plain error.[24]

In this case, we likewise conclude that we need not decide the proper interpretation of Rule 512, for two reasons.

First, in his briefing, Anderson does not address — or even mention — Evidence Rule 512, even though this rule was discussed when the parties addressed this issue in the trial court. We therefore conclude that Anderson has inadequately briefed this claim of error.[25]

Second, Anderson has not identified any actual prejudice that he suffered from this instruction, beyond the inability to argue the type of adverse inference precluded by Rule 512. We also note that the court separately instructed the jury

---

[22] *See* Commentary to Alaska Evid. R. 512(c) ("Whether an instruction shall be given is left to the sound judgment of counsel for the party against whom the adverse inference may be drawn. The instruction is a matter of right, if requested.").

[23] *See Hesch v. State*, 2010 WL 1838597, *3 (Alaska App. May 5, 2010) (unpublished).

[24] *Id.* at *4.

[25] *See Berezyuk v. State*, 282 P.3d 386, 399 (Alaska App. 2012) (holding that when an opening brief "merely mentions a claim, with no substantive argument of the issue, and with no citation to pertinent legal authority, the claim will be deemed waived").

(without objection) that it could only consider testimony and exhibits that were actually admitted as evidence.

Accordingly, we reject Anderson's challenge to Instruction No. 9B.

*The proposed mitigators that the superior court rejected*

At sentencing, Anderson asked the superior court to find either that he played a minor role in the assaults or, in the alternative, that he committed the three assaults because of serious provocation from the victims.[26] The superior court rejected both of these proposed statutory mitigators.

On appeal, Anderson points out that the jury was unable to reach verdicts on the charges of first-degree robbery and conspiracy to commit first-degree robbery. And he notes that his trial attorney argued in closing that there was no robbery or conspiracy, but in fact the "purported robbery victims assaulted [Anderson]." From this, Anderson cursorily claims that the superior court could have found either mitigator and that the court erred in failing to do so.

But Anderson fails to address the superior court's findings, let alone explain why these findings are erroneous. The superior court found that "[Anderson's] role wasn't minor because, but for the planning, but for the recruiting, but for the kicking in the door, but for three people with weapons being present in this residence, none of the assaults would have occurred." The superior court then emphasized that Anderson "was involved in the planning. He kicked in the door. He was clearly present[;] the victim's

---

[26]   AS 12.55.155(d)(2) and AS 12.55.155(d)(6), respectively.

blood was on his sweatshirt.  So, but for his conduct, there wouldn't have been any assaults."[27]  The superior court therefore rejected the proposed "minor role" mitigator.

Regarding the "serious provocation" mitigator, the court found that the victims' efforts to defend themselves when their home was invaded by three armed individuals did not constitute "provocation" mitigating Anderson's conduct.

Anderson has not shown that the superior court's factual findings are clearly erroneous.[28]  Based on these facts, we conclude that Anderson failed to prove his proposed mitigators by clear and convincing evidence.[29]

*The proposed mitigator that the superior court found*

Anderson proposed an additional mitigating factor as to one of his assault convictions.  The superior found this mitigator — concluding that the pistol-whipping of one of the victims was among the least serious conduct included within the definition of first-degree assault.[30]

---

[27]  This sweatshirt was not seized from the hospital but rather from the residence of the woman who drove Anderson to the hospital.

[28]  *See Michael v. State*, 115 P.3d 517, 519 (Alaska 2005) (holding that the existence or non-existence of a mitigating factor is a mixed question of fact and law; any factual findings regarding the nature of the defendant's conduct are reviewed for clear error and whether those facts establish the mitigator is a legal question reviewed de novo).

[29]  *See* AS 12.55.155(f)(1) (mitigating factors must be established by clear and convincing evidence).

[30]  AS 12.55.155(d)(9).

On appeal, Anderson argues conclusorily that the superior court "declined to give [this mitigator] adequate weight" and that Anderson should be resentenced. We conclude that Anderson's briefing is inadequate to preserve this claim of error.[31]

*The superior court did not err when it found that Anderson had two prior felony convictions*

The maximum sentence for first-degree assault, a class A felony, is 20 years.[32] At the time Anderson committed his offenses, the presumptive sentencing range for a second felony offender was 10 to 14 years, and the presumptive sentencing range for a third felony offender was 15 to 20 years.[33] Anderson argues on appeal that the superior court erred when it found he had two prior felony convictions and was therefore a third felony offender.

The calculation of the number of a defendant's prior felony convictions for purposes of presumptive sentencing is governed by AS 12.55.145. Under subsection (a)(1)(C) of that statute, two or more felony convictions "arising out of a single, continuous criminal episode" constitute a single conviction if "there was no substantial change in the nature of the criminal objective" during that episode, and if the defendant received concurrent sentences for the crimes.

At the time Anderson committed the offenses in this case, he had been previously convicted (in a single case) of two felonies in the state of Washington:

---

[31] *See Petersen v. Mutual Life Ins. Co. of New York*, 803 P.2d 406, 410 (Alaska 1990) ("Where a point is not given more than a cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

[32] AS 12.55.125(c). First-degree assault is a class A felony. AS 11.41.200(b).

[33] Former AS 12.55.125(c)(3) (2009) and former AS 12.55.125(c)(4) (2009), respectively.

manslaughter and second-degree assault, involving two separate victims. In the superior court, Anderson argued that these two prior convictions constituted a "single conviction" for purposes of AS 12.55.145(a)(1)(C).

Anderson asserted that both convictions arose out of a single "melee" and that they should therefore be treated as one prior felony conviction for purposes of presumptive sentencing. Under AS 12.55.145(d), Anderson had the burden of proving this assertion by clear and convincing evidence.

The only evidence on this issue was a Washington State police officer's affidavit describing the offenses. This affidavit was part of the presentence report in the present case.

This affidavit showed that both of Anderson's prior felonies occurred close in time and were related to each other. During an altercation between Anderson's friend and another man, Anderson shot and killed the other man. Then, when a friend of the gunshot victim intervened, Anderson pistol-whipped this person. Anderson pleaded guilty to manslaughter for the shooting and to felony assault for the pistol-whipping. He received concurrent sentences.

The superior court found that these two prior felony convictions were separate for purposes of presumptive sentencing. The court acknowledged that Anderson received concurrent sentences in the Washington case, but the court nonetheless found that, although the convictions likely arose from a single, continuous course of conduct, there was a substantial change in the nature of Anderson's criminal objective when he pistol-whipped the second man. That is, the superior court found that Anderson shot the first victim, but then pistol-whipped the second victim only when that person intervened. The superior court found that the legislature did not intend for this type of circumstance to be treated as a single conviction with a single criminal objective.

On reconsideration, the court made further findings. The court found that Anderson's initial objective was to "assault the decedent," but that Anderson did not appear to contemplate or even consider assaulting the second person until that person lunged at him, and Anderson tried to "fend" him off. The court therefore rejected Anderson's characterization of the incident as a continuing "melee," finding that it involved "a new victim, a new purpose, and a new act," and that Anderson had put forth no evidence to contradict these findings.

The superior court contrasted Anderson's case with an example given in the legislative commentary to AS 12.55.145. In the commentary, the legislature explained that "the breaking and entering of a building with the intent to commit theft" (burglary) and the resulting "taking of property in the building" (theft) would constitute a single prior conviction for presumptive sentencing purposes.[34] The legislature noted that, under those circumstances, the crimes shared a single criminal objective: to obtain property.[35] In contrast, the court in this case noted that the original criminal objective of Anderson's prior shooting did not extend to the second assault.

On appeal, Anderson renews his claim that his prior convictions were part of a "street brawl" with a singular criminal objective to engage in assaultive behavior. But given the evidence presented at sentencing, the trial court did not clearly err in finding that Anderson had failed to prove that he had a singular criminal objective.

We note that under AS 12.55.127(c)(2), when a defendant is convicted of two or more counts of homicide in any degree, or of assault in any degree, the defendant must receive some amount of consecutive term of imprisonment for each count.

---

[34] Commentary to Alaska's Revised Criminal Code, 1978 Senate Journal Supp. No. 47 (June 12), at 156-59.

[35] *Id.*

Consequently, if an Alaskan defendant were to be convicted of the same two felonies for which Anderson was convicted in the State of Washington, those two felonies could never qualify as a single prior felony offense under AS 12.55.145(a)(1)(C).

We note, too, that the Washington Supreme Court has held that crimes involving separate victims do not qualify as the "same criminal conduct" (and thus, do not constitute a single conviction) for purposes of calculating a defendant's applicable sentencing range.[36]

Accordingly, we affirm the superior court's ruling that Anderson was a third felony offender.

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

[36] *State v. Dunaway*, 743 P.2d 1237, 1241 (Wash. 1987) (en banc). The *Dunaway* rule has now been statutorily codified. *See* RCW 9.94A.589(1)(a); *State v. Yusuf*, 2018 WL 1168724, at *7 (Wash. App. Mar. 5, 2018) (unpublished) (Spearman, J., concurring).