# ORLANDO FLOYD *v.* STATE OF MARYLAND

[No. 376, September Term, 1974.]

*Decided January 20, 1975.*

The cause was submitted on briefs to GILBERT, MENCHINE and MOORE, JJ.

Submitted by *Ronald L. Spahn, Assigned Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, David B. Allen, Assistant Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *William Monfried, Assistant State's Attorney for Baltimore City,* for appellee.

GILBERT, J., delivered the opinion of the Court.

The appellant, Orlando Floyd, is a victim of circumstances. The fortuitous events leading to his conviction in the Criminal Court of Baltimore for violation of the Controlled Dangerous Substances laws of this state

prove the accuracy of the old cliche that "truth is stranger than fiction." [1]

On August 21, 1973, at approximately 7:45 P.M., Officer William West of the Baltimore City Police Department, received a radio message to investigate a shooting at 2036 Edmondson Avenue. West proceeded to the scene and upon arrival at the Shabazz restaurant he observed a man, later identified as the appellant, in a prone position on the floor. The man was bleeding profusely from a wound in the right arm, two in the right leg and three in the left leg. Officer Lawrence Mize also went to the scene. An ambulance was called and, while awaiting its arrival, Officer West asked the appellant's name, but the appellant "didn't say anything." West stated that he then turned to the other people who were in the restaurant and asked if any of them knew the identity of the wounded man, but the response was in the negative. The ambulance transported Floyd to Bon Secours Hospital, and Officer Mize, in a patrol car, followed the ambulance. At the hospital Floyd's bloody clothing was cut from his body in order that he could receive treatment for the multiple gunshot wounds. According to Officer Mize he was told that Floyd's condition was "stable", so he then asked Floyd if he, Floyd, wanted to talk. Floyd responded, "Man, I'm shot. I ain't got time to talk." The officer, believing that he had possible homicide on his hands as a result of the multiple gunshot wounds, proceeded to check Floyd's clothing for identification, as well as for evidence that might be useful in a homicide investigation. In addition to four bullets found in one of Floyd's pants pockets, the officer discovered twenty-four glassine bags of what proved to be heroin. The glassine bags were in a watch pocket of the pants and in a shirt pocket.

When the case was called to trial before Judge Paul A. Dorf, sitting without the intervention of a jury, Floyd moved

---

1. A variance on the lines written by George Noel Gordon, Lord Byron, 1788 — 1824 in *Don Juan, canto* XIV, st. 101. Lord Bryon said:

" 'Tis strange — but true; the truth is always strange; Stranger than fiction."

to suppress the evidence on the ground that it had been seized in violation of his Fourth Amendment rights. Although Floyd testified in the case in-chief that he had upon request identified himself to Officer Mize, he did not testify at the suppression hearing. Thus, insofar as the warrantless search was concerned, Judge Dorf had before him only the uncontradicted testimony of the officer. Judge Dorf found no violation of Floyd's Fourth Amendment rights. We agree with that holding, and we affirm the judgment.

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

By its very language the Fourth Amendment does not proscribe all searches, but only "unreasonable searches". *Terry v. Ohio*, 392 U. S. 1, 9, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968).

Patently the question presented is the reasonableness, *vel non*, of the search by Officer Mize of the clothing of a gunshot victim, at a hospital emergency room, where the search is conducted for the purpose of ascertaining the identity of the victim and inadvertently contraband is discovered.

There are two reasons why the evidence was properly admissible. First, the bloody clothing was evidence of the shooting. Inasmuch as it was evidence of a crime, the police had a right to seize it lest it be removed from the hospital emergency room and destroyed. "The clothing of a person is admissible in evidence to the extent that it is helpful in resolving a fact in issue. Thus, the clothing of a victim is admissible to show the nature of his wounds . . . the course of a bullet; [or] the use of force by the defendant." 3

*Wharton's Criminal Evidence* § 632 (13th ed. C. Torcia 1973). Although we recognize that the gunman who shot Floyd was, insofar as the record before us discloses, never apprehended so that the bloody clothing has not been used as evidence in any prosecution for that offense, such a fact does not negate the right of the police to seize the evidence. Second, when the officer was unable to ascertain Floyd's identity by questioning him, the officer, in our view, had not only the right, but the duty to look in Floyd's clothing for the purpose of endeavoring to determine the shooting victim's identity.[2] An analogous case to that now before us was presented in *Vauss v. United States,* 370 F. 2d 250 (D.C. Cir. 1966). There the police happened upon an unconscious person lying on a public street. An officer searched the person in order to secure identification, and in the process discovered fifteen envelopes which contained heroin. When the person was removed to the hospital, a capsule containing heroin was found in his clothing. The court concluded that the search was "both legally permissible and highly necessary." The court observed:

> ". . . There is a positive need to see if the person is carrying some indication of a medical history,[3] the rapid discovery of which may save his life; there is also a need to identify persons so found in order to notify relatives or friends."

Once it is established, as here, that the police have a right to make a valid intrusion into Floyd's clothing, there is no question but that any contraband inadvertently discovered therein is seizable and admissible in evidence. *Warden v. Hayden,* 387 U. S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967); *Brown v. State,* 15 Md. App. 584, 292 A.2d 762 (1972) at 600 n. 30.

---

**2.** *Cf.* Md. Ann. Code art. 27, § 336A, which requires medical personnel to disclose to the police the name and address of any gunshot wound victim and any facts which might assist in the detection of the crime.

**3.** For example, a medical history may reveal that the victim has a rare blood type, is suffering from a chronic disease, is allergic to certain drugs or is a hemophiliac; all of which would ordinarily be unknown in the first instance to the hospital.

In sum, Officer Mize exercised common sense in searching Floyd's clothing, and "there is no war between the Constitution and common sense." *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081 (1961).

*Judgment affirmed.*