**Geraldine GRIGGS, Plaintiff,**

v.

**LEXINGTON POLICE DEPARTMENT, et al., Defendants.**

**Civ. A. No. 86–3217–S.**

United States District Court, D. Massachusetts.

Oct. 23, 1987.

MEMORANDUM AND ORDER ON DE-
FENDANTS' MOTION TO DISMISS

SKINNER, District Judge.

On October 31, 1986,[1] plaintiff Geraldine Griggs ("Griggs") filed this *pro se* action alleging various federal civil rights viola-

tions and related state claims allegedly perpetrated by the following defendants:

1. Town of Lexington, Lexington Police Department, Lexington Fire Department, Paul Ferdon (Lexington police chief), John Bergeron (Lexington fire chief), and Charles Shannon (Lexington patrolman) (together, "Lexington defendants");

2. Harvard Community Health Plan, Inc., John Anthony Davies, M.D., and Lawrence Shulman, M.D. (together, "HCHP defendants");

3. Lahey Clinic Hospital, Inc., Lahey Clinic Foundation, Inc., Julie Ammen, Elaine Shaunessy, and Drs. Shelly Fleet, Gerald Bigwood, John A. Coller, Stephen A. Wasilewski, Sara R. Davies, Daniel Bienkowski, and Elliot Cohen (together, "Lahey defendants");

4. Emerson Hospital ("Emerson"); and

5. Veterans Administration, Thomas Turnage, Administrator ("VA").

With one exception, all of the alleged violations stem from an incident on October 31, 1983, wherein Griggs, a black woman, was struck by a moving vehicle as she was walking along a road in Lexington. The essence of Griggs' complaint is that she was poorly treated by the Lexington and Emerson defendants, that she received poor medical treatment from the Lahey and HCHP defendants, and that her employer, the VA, deliberately placed her at risk by changing her assigned work shift with inadequate notice, all of the aforementioned on the basis of race.

On June 11, 1987, I allowed Lexington defendants' motion for a more definite statement, finding that the complaint as framed was so vague and ambiguous so as to prevent defendants from preparing a responsive pleading. In response, Griggs has filed no less than four supplemental pleadings in an effort to comply with my order.

All defendants have now moved to dismiss. Griggs has filed opposition to Lahey defendants' and HCHP defendants' motions, but she has not filed opposition to the

---

1. The complaint was filed on October 31, 1986, and not on November 7, 1986 as Lexington defendants suggest in their motion to strike and dismiss.

motions of the Lexington, Emerson, and VA defendants. For the reasons that follow, all motions to dismiss are allowed.

*Background*

At the outset, I recognize that *pro se* complaints are to be read liberally, *Gilday v. Boone,* 657 F.2d 1 (1st Cir.1981). The facts may be summarized as follows. Shortly after midnight on October 31, 1983, plaintiff Griggs was walking along a road in Lexington, Massachusetts when she was struck by a passing automobile. Lexington police arrived at the scene and made provisions to get Griggs to a hospital. Members of Lexington Fire Department's ambulance service and personnel from Emerson Hospital transported Griggs to the Lahey Clinic in Burlington for emergency medical treatment. Griggs remained hospitalized until November 8, 1983, at which time she was transferred to the Parker Hill facility of the Harvard Community Health Plan where she remained until November 23, 1983.

The complaint does not explain in great detail or with clarity the extent of Griggs' injuries. However, it does appear that Griggs sustained serious injuries, including but not limited to broken bones and serious bruises such as to require surgery and extended hospitalization.

*Lexington Defendants*

▆ Griggs charges that Lexington police have engaged in racially motivated police harassment "as far back as Spring 1982 ... [which] laid groundwork for problems relating to her auto injury and problems during hospital stay." In addition, Griggs charges that a Lexington police officer assaulted her in August, 1983. These alleged incidents occurred more than three years prior to filing of this action, and as I must apply the most analogous or appropriate state statute of limitations to this 42 U.S.C. § 1983 action,[2] *Wilson, et al. v.*

*Garcia,* 471 U.S. 261, 268, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254, 261 (1985); *Small v. Inhabitants of City of Belfast,* 796 F.2d 544, 545 (1st Cir.1986), these portions of the complaint are time-barred, *see* M.G.L. c. 260, § 4.

▆ This three-year statute of limitations does not bar those events on or after October 31, 1983. As most lucidly explained in her July 2, 1987 pleading, Griggs charges that the Lexington police deliberately filed a false accident report which tended to defame her reputation, that the report assessed her with blame for the accident, and that the intent of the defamatory statements was to inflict emotional and physical distress. Griggs also charges that the "Lexington defendants ... gave license to Lahey and Harvard defendants to look upon plaintiff with contempt and to mistreat her." Plaintiff has not pleaded a federal claim—none of these allegations rise to the level of constitutional protection under 42 U.S.C. § 1983. Likewise, Griggs' charge that the Lexington Fire Department's ambulance service exhibited poor response time in rendering emergency medical care does not, by itself, rise to the level of constitutional protection.

There are many other allegations in the pleadings that relate (or may relate [3]) to Lexington defendants, but plaintiff has not attached dates to any of them, and so it is impossible to determine whether they are within the three-year limitations period. Notwithstanding this deficiency, all of these other allegations are of the same character as the aforementioned occurrences.

▆ The only remaining allegation is that the Lexington police unreasonably searched through plaintiff's handbag at the scene of the accident and seized her federal government photo identification badge. It is unquestionable that this is a serious alle-

---

**2.** Plaintiff only generally refers to her "federal civil rights." As to the Lexington defendants, the only possible avenue for relief is 42 U.S.C. § 1983.

**3.** Among the deficiencies in Griggs' pleadings is a lack of specificity. For example, in her August 5, 1987 pleading, Griggs charges that

"[d]uring plaintiff's hospitalization [at HCHP], one officer accosted her in the first floor phone booth area.... Police cruisers frequently drove in view of her HCHP hospital window." Nowhere does she state that these incidents involved Lexington police.

gation. However, many courts have recognized that it is reasonable for the police to search persons to determine their identity where police find that person unconscious, *see, e.g., Vauss v. United States,* 370 F.2d 250 (D.C.Cir.1966), or where the person is so seriously injured such that questioning would be impractical or unproductive, *see, e.g., Floyd v. State,* 24 Md.App. 363, 330 A.2d 677 (1975). *See generally,* W. La-Fave, *Search and Seizure* § 5.4(c) (2d Ed. 1987). The nature and seriousness of Griggs' injuries lead me to conclude that the search and seizure as alleged falls within the scope of a reasonable search as delineated in the above line of cases. In sum, plaintiff has failed to state any claim upon which relief can be granted, and Lexington defendants' motion to dismiss must be granted.

## HCHP Defendants

■ Griggs charges that HCHP defendants "sought to misrepresent facts in the [medical] record, caused her humiliation, and poor medical care was administered." She further alleges that these defendants failed to provide her with her medical records, that she was treated differently (e.g., by providing her with a "food tray different from normal") by hospital personnel on account of her race, and that by allowing medical residents to perform examinations upon her, Drs. Shulman and Davies directly contributed to "poor medical management." Griggs has not pleaded any federal claim.

Plaintiff does not have a cause of action against the HCHP defendants under 42 U.S.C. § 1983—no state action exists nor is any state action alleged. The only conceivable basis for a federal claim lies under 42 U.S.C. § 2000d, which provides that:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

Griggs' opposition to HCHP's motion to dismiss suggests that she relies on § 2000d, as she bases her opposition on the ground that these defendants are health care providers who receive federal monies, and are therefore "federal contractors."

As the statutory language in § 2000d makes plain, a threshold requirement for maintaining an action under this section is that the defendant actually be a recipient of the federal financial assistance used in the discriminatory manner, *cf. West Zion Highlands v. City of Zion,* 549 F.Supp. 673 (N.D.Ill.1982). However, to bring a private action hereunder, the plaintiff must be the intended beneficiary of, an applicant for, or a participant in a federally funded program, *Simpson v. Reynolds Metals Co., Inc.,* 629 F.2d 1226 (7th Cir.1980); *see also, Trageser v. Libbie Rehabilitation Center,* 590 F.2d 87, 89 (4th Cir.1978), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). Griggs has only alleged that HCHP receives federal funds, and has not alleged that she is or is an intended beneficiary of those federal funds. In short, she has not pleaded the necessary nexus between HCHP's receipt of funds and her participation in those same programs, and she has failed to plead any federal claim whatsoever against the HCHP defendants.

## Lahey Defendants

■ Lahey defendants are charged with seeking Griggs' permission for "a questionable invasive diagnostic procedure in her abdomen," with not having her well-being in mind, with allowing residents to "in effect extort a signature [for a consent form]," and for ultimately performing surgery against her will. Griggs also charges that Lahey defendants denied her adequate access to her medical records.

Griggs has not pleaded a federal claim. No state action is involved, and Griggs has not alleged that she was an intended beneficiary of or participant in a federally funded program from which Lahey received funds. Therefore, no action will lie under either 42 U.S.C. § 1983 or § 2000d.

## Emerson

■ Emerson is charged with jeopardizing Griggs' health by its poor response time on the night of the accident. Griggs alleges that race was a factor in the quality

of the service, and that care was not taken "to properly administer basic life support measures and splinting at [the] accident area." Griggs does not allege any state action, and she does not allege that Emerson was a recipient of federal funding, and in sum, Griggs has not pleaded any federal claim upon which I may grant relief.

### Veterans Administration (VA)

■ Griggs' allegations against her employer, the VA, can be boiled down to this: the VA knew of her transportation problems (i.e., the need for private transportation) to and from work, and that her employer deliberately placed her at risk by changing her work schedule with inadequate (two days) notice. Griggs raises other occurrences prior to the early morning of October 31, 1983, but these are beyond the statute of limitations, *see, supra,* at 4.

Griggs does not state that this action was taken on the basis of race, but nonetheless charges that her civil rights were violated. She has not alleged .a federal claim against the VA, but even if she had, she has not exhausted her administrative remedies as set forth in 42 U.S.C. § 2000e–16. She is foreclosed by § 2000e–16(b) from bringing an action against her employer prior to having exhausted her remedies before the Equal Employment Opportunity Commission, and she has not done so.

### Conclusion

For the foregoing reasons, the motions to dismiss of all defendants are ALLOWED, and judgment shall forthwith enter for defendants and against plaintiff.