STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. EDWARD ADAMS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 13, 1988—Decided May 3, 1988.

Before Judges KING, GAULKIN and GRUCCIO.

*Alfred A. Slocum,* Public Defender of New Jersey, attorney for appellant (*James Jukes,* Assistant Deputy Public Defender, of counsel and on the brief).

*W. Cary Edwards,* Attorney General of New Jersey, attorney for respondent (*Jeanne M. Andersen,* Deputy Attorney General, of counsel).

The opinion of the court was delivered by

KING, P.J.A.D.

This case involves the search of a car left outside a hospital emergency room and the search of defendant's clothes taken from him before emergency treatment for a gun-shot wound. Defendant Edward Adams appeals from his conviction for possession of a controlled dangerous substance in violation of *N.J.S.A.* 24:21–20a(1) and possession of a controlled dangerous substance with intent to distribute in violation of *N.J.S.A.* 24:21–19a(1). He was convicted after the Law Division judge denied his motion to suppress evidence seized during the course of the investigation and he pled guilty. *R.* 3:5–7(d). Defendant now asks us to reverse the conviction and suppress the evidence which he claims was seized in violation of his federal and State constitutional rights.

On January 27, 1985 defendant purchased two bags of heroin. After making the purchase he was returning to his apartment when he was shot by an allegedly unknown assailant. The Long Branch Police Department received a phone call that a man had been shot at the Pinewood Apartments and transmitted the information to patrolling officers in nearby police cars. As one officer was going to the scene, he saw a white Datsun

280Z travelling at a high rate of speed away from the apartments. The officer followed the vehicle towards the Monmouth Medical Center. He found the vehicle stopped and parked irregularly at the emergency room entrance with its doors open and the key in the ignition. Another officer, who had been at the hospital on an unrelated matter, joined him. Since they both heard the report of the shooting incident and the car was seen leaving the Pinewood Apartments at a high rate of speed, one of the officers searched the front-seat area of the car for a weapon. He did not find a weapon but did find a plastic bag filled with glassine envelopes containing a powdered substance under the driver's seat.

The officers then entered the hospital where they learned that the defendant was a "Code 3" patient, *i.e.*, there was a likelihood that he could die from his injuries. They obtained his clothing from a nurse, seeking possible evidence concerning the weapon and information about the trajectory of the bullet, and discovered a small package which contained heroin. The defendant eventually recovered from his wounds and was indicted on the drug charges. He moved to suppress the evidence seized from the car and from his clothing, contending that the search was improper because there was no reason for the officers to believe that a weapon would be present in either place.

We are satisfied that the car search was valid under federal and State concepts of exigency, automobile search, abandonment, and impoundment. The circumstances support the officers' reasonably-grounded suspicion that the car could have contained a weapon. As Judge Kennedy said:

> Given the nature of the circumstances of this case, the officer's actions seem entirely justified. To repeat a shooting had just taken place. A speeding vehicle was observed leaving the area of the shooting, so that the 280Z was initially implicated in the incident. The vehicle was observed parked irregularly with the doors wide open, keys in it, outside the emergency room.
>
> I'm certainly satisfied that at least there was an articulable suspicion that the weapon could have been in that vehicle and to protect the public I think the initial search was most appropriate.

The Supreme Court held in *Cady v. Dombrowski*, 413 *U.S.* 433, 441, 93 *S.Ct.* 2523, 2528, 37 *L.Ed.*2d 706 (1973), that officers were justified in searching the car of a policeman for a weapon to protect the public from those who might recover the gun under a "community caretaking function". In the case before us, there were similar exigent circumstances which justified search of the passenger compartment of the car. Other such warrantless searches of cars have been upheld in this State. *State v. Martin*, 87 *N.J.* 561 (1981) (upheld a search of a parked, unoccupied car in a public parking lot; car believed involved in a recently-committed armed robbery). *See State v. Esteves*, 93 *N.J.* 498 (1983).

■ The search of the car is also justified under the theory of abandonment. The police could reasonably have concluded that an automobile improperly parked, with the doors open and the key in the ignition, had been abandoned and the owner had a lessened privacy interest. While searches of cars properly parked, or parked on private property have not been upheld, *i.e., U.S. v. Scrivner*, 680 *F.*2d 1099 (5th Cir.1982) (no abandonment if driver leaves truck with keys in ignition on his own premises), cars illegally parked or parked in a hazardous manner have been treated by the courts as abandoned. *See also U.S. v. Gulledge*, 469 *F.*2d 713 (5th 1972) (trailer was abandoned when men, leaving it with permission at a service station for two days, did not return after ten days). *See* Annotation, "Property left in private vehicles or craft", 40 *A.L.R.*4th 480–484 (1985).

■ Courts have also upheld the impoundment of an illegally parked vehicle. In *South Dakota v. Opperman*, 428 *U.S.* 364, 96 *S.Ct.* 3092, 49 *L.Ed.*2d 1000 (1976), the Court upheld the impoundment of vehicles in a no-parking zone holding that "authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *Id.* 428 *U.S.* at 369, 96 *S.Ct.* at 3097. Under the facts before us the officers were justified in

impounding a car which had been left at an emergency room entrance of a hospital with the doors open and the key in the ignition. *Cf. State v. Mangold,* 82 *N.J.* 575, 584 (1980) (occupants present at scene have right to secure vehicle before inventory).

■ The exigent circumstances also permitted the officers to examine Adams' clothing at the emergency room. The officers were told that Adams was a "Code 3" patient, in danger of dying. As Judge Kennedy found:

> "[H]ere, looking at it from a practical standpoint the defendant had just been shot. He was what I believe the term is code three. He was being worked on by the medical personnel in the subjective thinking of the police officer initially involved there was the possibility the defendant wouldn't make it and they were talking about the possibility of a potential murder trial involving a handgun. The clothing would have been material evidence and certainly there would be a strong possibility that if not immediately seized the trace evidence that we all know as so important in this type of case would have been destroyed. Looking for fibers, hair, anything that would have linked another person to the shooting.
>
> The police officer testified in this case you're dealing with a curtailed trajectory of the bullet, how close the defendant was to the assailant all by the analysis of the clothing and the trace evidence that may have been found.
>
> Certainly, exigent circumstances permit the seizure of that clothing. And then you move on to the typical plain view doctrine where they had the clothing, made appropriate seizure of it, and then inadvertently discovered the CDS that's the subject of this case."

These were exigent circumstances and the evidence obtained in the inspection of defendant's clothing was lawfully obtained. *See State v. Smith,* 129 *N.J.Super.* 430 (App.Div.1974).

The exigency doctrine has also been used to uphold the warrantless seizure and examination of a defendant's pants when he had been taken to a hospital for a mental examination after police suspected that he killed his young son. The Washington Supreme Court determined that the pants could have lost their significance as evidence once the defendant was allowed to take them home and wash them. *State v. Smith,* 88 *Wash.*2d 127, 559 *P.*2d 970, *cert. den.* 434 *U.S.* 876, 98 *S.Ct.* 226, 54 *L.Ed.*2d 155 (1977).

■ Examination of clothing has also been upheld under the "plain view" doctrine. In the present case the nurse had the clothing when the officers entered the emergency room and they were able to immediately examine it. The court upheld such a search in *Chavis v. Wainwright,* 488 *F.*2d 1077 (5th Cir.1973), where a defendant was taken to a hospital seriously injured from a stab wound. The police seized his clothing as evidence of a crime and the heroin found in the inventory of the clothing was properly admissible. *See also Floyd v. State,* 24 *Md.App.* 363, 330 *A.*2d 677 (1975), where defendant with multiple gunshot wounds was taken to a hospital. Police seized his bloody clothing as evidence of the crime and to help them identify the victim. The heroin inadvertently found in the clothing was admissible in evidence. *See also* 2 *La Fave, Search & Seizure,* § 5.5(c) at 543 (West 2nd ed. 1987).

We also disagree with Adams' claim that his sentence was excessive. The sentence was within the scope of the plea agreement; the judge properly balanced the aggravating and mitigating factors. *State v. Roth,* 95 *N.J.* 334 (1984); *State v. Sainz,* 107 *N.J.* 283 (1987). The excessive sentence claim is clearly without merit. *R.* 2:11–3(e)(2).

Affirmed.