J-S34036-23

2023 PA Super 212

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL RAMONE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 633 WDA 2022 |

Appeal from the Judgment of Sentence Entered May 23, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008310-2020

BEFORE: LAZARUS, J., STABILE, J., and MURRAY, J.

OPINION BY MURRAY, J.:                              **FILED: October 24, 2023**

Michael Ramone Williams (Appellant) appeals from the judgment of

sentence entered following his non-jury convictions of person not to possess

a firearm, carrying a firearm without a license, and public drunkenness.[1] After

careful review, we affirm.

The trial court described the underlying events:

On August 24, 2020, police officers and medics were dispatched
to the 1500 block of Barr Avenue for a report of an unresponsive
male. When Officer [Nicholas] Mollo[2] arrived, he observed a blue
Dodge Durango with its driver's side door ajar and viewed a body
from the waist down hanging outside the driver's side of the
vehicle. He also observed several pill bottles that were blue in
color on the sidewalk and grassy area near the sidewalk[,] as well
as a large sum of money. (Transcript, P. 4).

---

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 5505.

[2] The trial court and parties spell the officer's name as "Molo." However, at
the suppression hearing, the officer spelled his name as "Mollo." Therefore,
we use that spelling throughout.

With the assistance of a flashlight, Officer Mollo observed Appellant, who appeared to be highly intoxicated, motionless[,] and lifeless inside of the vehicle. Shortly thereafter, Appellant began to awaken somewhat and attempted to respond to Officer Mollo's inquiries. However, his speech was too slurred to understand his responses. Officer Mollo was unable to determine the Appellant's name and the Appellant's eyes were bloodshot and glassy. (Transcript P. 5). Appellant needed assistance to exit the vehicle and stand on the ground[; Officer Mollo subsequently helped Appellant to sit on the ground]. Moments later[,] Officer [Frank] Scatena arrived at the scene and … Appellant continued to mumble incoherently and made statements indicating that he did not want to get shot. The officers made inquiries regarding the Appellant's name and date of birth and the Appellant was frisked for identification without success.[3] Officer Scatena obtained the Appellant's consent to search his vehicle. During the search, Officer Scatena recovered [blue] prescriptive bottles, containing marijuana[,] and stacks of money totaling approximately $12[,]500.00. Additionally, the officers observed the odor of raw marijuana emanating from the Appellant's red backpack [that police discovered next to him on the ground]. Following a search of the backpack, the officers recovered additional pill bottles that contained suspected marijuana. Officer Mollo recovered a Glock 26 firearm from the backpack as well as the Appellant's ID. Officer Mollo checked the Appellant for warrants, and he learned that the Appellant had an outstanding warrant for a probation violation. The Appellant was escorted to the hospital for medical evaluation and after he was cleared for incarceration, he was transported to the Allegheny County Jail.

Trial Court Opinion, 12/19/22, at 1-2 (footnotes added).

On July 6, 2021, Appellant filed an omnibus pretrial motion seeking to suppress all physical evidence. A suppression hearing took place on

---

[3] The officers performed a license plate search that revealed the vehicle was registered to a female.

September 15, 2021. At the end of the hearing, the suppression court denied Appellant's omnibus pretrial motion.[4]

A stipulated non-jury trial took place on March 3, 2022. On March 7, 2022, the court found Appellant guilty of the above offenses. On May 23, 2022, the trial court sentenced Appellant to an aggregate 4 – 8 years in prison, followed by 18 months of probation. The instant, timely appeal followed.[5]

On appeal, Appellant raises a single issue:

> Did the [suppression] court abuse its discretion in denying the motion to suppress evidence found in Appellant's backpack insofar as the police seizure and search of the Appellant's backpack without a warrant and without consent was unconstitutional in the absence of probable cause and exigent circumstances to justify the search?

Appellant's Brief at 5.[6]

We begin by recognizing:

---

[4] The suppression court briefly explained its reasons for denying Appellant's suppression motion. N.T., 9/15/21, at 36-37. The suppression court issued a written order that did not contain any findings of fact or conclusions of law. Order, 9/15/21, at 1 (unnumbered). Following the suppression hearing, the suppression judge retired without authoring an opinion in this matter.

[5] Appellant and the trial court complied with Pa.R.A.P. 1925.

[6] Appellant does not specify whether he is claiming the trial court violated his rights under the Fourth Amendment to the United States Constitution, Article 1, Section 8 of the Pennsylvania Constitution, or both. To the extent he is challenging the denial of his suppression motion pursuant to Article 1, Section 8, Appellant does not distinguish his state constitutional rights as being greater than his federal constitutional rights. **See Commonwealth v. Haynes**, 116 A.3d 640, 644-55 (Pa. Super. 2015) (discussing the history of Article 1, Section 8, and its differences and similarities to the Fourth Amendment).

[Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted). "[I]t is the sole province of the suppression court to weigh the credibility of witnesses," and "the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Blasioli*, 685 A.2d 151, 157 (Pa. Super. 1996) (citation omitted).

The Fourth Amendment to the United States Constitution guarantees, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. Amend. IV. The Pennsylvania Constitution also protects this interest by ensuring, "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures...." Pa. Const. Art. I, Section 8. Therefore, "[a]s a general rule, a search conducted without a warrant is presumed to be unreasonable unless it can be justified

under a recognized exception to the search warrant requirement." *Commonwealth v. Agnew*, 600 A.2d 1265, 1271 (Pa. Super. 1991) (citations omitted).

Appellant contends:

the police lacked probable cause and exigent circumstances to conduct a warrantless seizure search of the Appellant's zippered backpack and its contents. The evidence of the gun found in the backpack was not admissible under the inevitable discovery doctrine or justifiable as a protective sweep search.

Appellant's Brief at 12. *See also id.* at 13-20.

Our standard of review for determining probable cause is well settled. "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed[,] and that the defendant has committed it." *Commonwealth v. Griffin*, 24 A.3d 1037, 1042 (Pa. Super. 2011) (citation omitted). We do not ask whether the officer's belief was "correct or more likely true than false. Rather, we require only a **probability**, and not a *prima facie* showing, of criminal activity." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citations and quotation marks omitted, emphasis in original). When assessing whether probable cause existed, "we must consider the totality of the circumstances as they appeared to the arresting officer." *Griffin*, *supra* at 1042 (citation and quotation marks omitted). Further, police action under the Fourth Amendment is proper "regardless of the individual officer's state of mind, as the long as the circumstances, viewed

**objectively** justify [the] action. … The officer's subjective motivation is irrelevant." ***Brigham City, Utah v. Stuart***, 547 U.S. 398, 404 (2006) (internal quotation marks and citation omitted, emphasis in original).

Here, the suppression court judge explained:

I went back over the transcript and back over your cases. What became readily apparent is [Appellant] was incapacitated at the time the police arrived. He was half in and half out of the car and pill [bottles] which ultimately contained marijuana were thrown around along with stashes of money. And I mean stashes. The total value of over $12,500.

[Appellant] did not know where he was or what he was doing and the police were in the process of trying to ascertain what was happening. Based upon all of those facts, I'm going to deny your motion.

N.T., 9/15/21, at 36-37.

In ***Commonwealth v. Johnson***, 969 A.2d 565 (Pa. Super. 2009), this Court stated, "[i]t is well-settled that exigent circumstances excusing the warrant requirement arise where the need for prompt police action is imperative." ***Id.*** at 569 (citation omitted). In ***Johnson***, police responded to a radio call of a shooting; Johnson, the shooting victim, had already been transported to the hospital. ***Id.*** at 566-67. The police and hospital personnel were not able to identify the victim, so police searched Johnson's clothing. ***Id.*** at 567. While looking for identification, the police discovered illegal narcotics and $302 in cash. ***Id.*** Johnson moved to suppress the physical evidence and the trial court granted his request. ***Id.***

On appeal, this Court reversed. ***Id.*** at 569. In holding that the search was permissible, we noted there was no Pennsylvania law directly on point and looked to several federal and state court decisions. ***Id.*** at 570. We approved of a decision by the Court of Special Appeals of Maryland, which involved similar facts. ***Id.*** The Maryland court held a warrantless search was reasonable "'where the search is conducted for the purpose of ascertaining identity of the victim and inadvertently contraband is discovered.'" ***Id.*** (quoting ***Floyd v. State***, 330 A.2d 677, 679 (Md. Ct. Spec. App. 1975)).

This Court in ***Johnson*** also reviewed the decision of the United States Court of Appeals for the District of Columbia Circuit in ***Vauss v. United States***, 370 F.2d 250 (D.C.Cir. 1966) (*per curiam*). In ***Vauss***, the police searched the pockets of an unconscious man, who was lying in the street, for identification. ***Johnson***, 969 A.2d at 570 (citing ***Vauss***, 370 F.2d at 251). The police found narcotics but no identification. ***Id.*** We quoted approvingly from ***Vauss***,

> That … a search as occurred here happens to yield evidence of a crime as a by-product even though not so intended is irrelevant. **A search of one found in an unconscious condition is both legally permissible and highly necessary**. There is a positive need to see if the person is carrying some indication of a medical history, the rapid discovery of which may save his life; there is also a need to identify persons so found in order to notify relatives or friends. That the cause of appellant's being unconscious was not known in no way impaired but rather enhanced the need and inherent power to search appellant.

***Id.*** (quoting ***Vauss***, ***supra*** at 251-52 (emphasis added)).

- 7 -

We further reviewed the decision of the United States District Court for the District of Massachusetts in **Griggs v. Lexington Police Dep't.**, 672 F.Supp. 36 (D.Mass. 1987), which ruled the police search of an unconscious woman's handbag was reasonable. The **Griggs** Court stated, "'many courts have recognized that it is reasonable for the police to search persons to determine their identity where police find that person unconscious, or where the person is so seriously injured such that questioning would be impractical or unproductive.'" **Johnson**, 969 A.2d at 570 (quoting **Griggs**, 672 F.Supp. at 39). We mentioned that the South Carolina Supreme Court found no merit to a claim that evidence obtained during a warrantless search of a critically wounded defendant should have been excluded. **Id.** at 570-71 (quoting **State v. Patrick**, 177 S.E.2d 545, 547 (S.C. 1970)).

Lastly, the **Johnson** Court quoted the California District Court of Appeals for the Fourth District, which recognized the need to identify unconscious or injured individuals and noted:

> An officer who is making or is present at a reasonable search is not required to close his eyes to contraband he discovers simply because it is not connected with the initial purpose of the search. Even though a search was authorized for one purpose, the seizing of the contraband found in that search would not be a violation of defendant's constitutional rights.

**Id.** at 571 (quoting **People v. Gonzales**, 5 Cal.Rptr. 920 (Cal. Dist. Ct. App. 1960) (citation omitted)). Thus, we concluded, "the need to identify the unconscious victim was itself an exigent circumstance thus justifying the warrantless search." **Id.** at 572 (citations omitted).

There has been almost no discussion of *Johnson* since it was authored over ten years ago. The sole exception is this Court's decision in *Commonwealth v. Gatlos*, 76 A.3d 44 (Pa. Super. 2013). In *Gatlos*, the police searched a purse found in a car at the scene of a multi-car accident to identify one of the drivers (the appellant). *Gatlos*, 76 A.2d 48. Police found appellant's identification in the purse, as well as a box containing cigars later determined to marijuana. *Id.* at 50. The trial court denied the appellant's motion to suppress, relying on *Johnson*, and finding the exigent medical emergency of appellant's incapacitated state necessitated the search to learn her identity. *Id.* at 53-54.

After discussing *Johnson*, the *Gatlos* Court rejected the "trial court's **solitary reliance** upon [it] in this case." *Id.* at 54 (emphasis added). We explained, "*Johnson* did not involve a vehicle search, but addressed the search of one's person. Pennsylvania law is clear that warrantless vehicle searches require probable cause and exigent circumstances, beyond mere mobility of the vehicle." *Id.* However, we determined that the search was reasonable. *Id.* at 55-57. We looked to *Johnson*, in combination with the purposes underlying the inventory search exception to the warrant requirement, and to other states' "emergency aid doctrine[s]." *Id.* We explained that underlying all three exceptions to the warrant requirement was the idea that these types of searches were not investigative but rather part of the police's "caretaking function[,]" and thus, "the conduct of the police will

be viewed as reasonable under the Constitution." *Id.* at 56 (citations omitted). We therefore deemed the search of the appellant's purse to be permissible as an inventory search. *Id.* at 58-59.

The instant matter is factually closer to the situation in *Johnson* than that in *Gatlos*. Here, Officer Mollo was called to the scene for a welfare check. N.T.. 9/15/21, at 4. At the suppression hearing, Officer Mollo testified that when he arrived at the scene, he observed:

> Legs basically from the waist down of a person hanging outside the vehicle's driver side door which was ajar. Walking up to the vehicle, I shined my flashlight and there was a male that was inside who appeared to be highly intoxicated. He was pretty motionless and lifeless upon my arrival, but as I shined my flashlight on him it created some type of stimulus. He started to wake up a little bit.

*Id.* Officer Mollo stated Appellant's eyes "were extremely glassy and bloodshot and his speech was very slurred making him nearly impossible to understand when I was asking him what was going on with him." *Id.* at 5. Officer Mollo could not understand what Appellant was saying when he asked Appellant's name. *Id.* Appellant was unable to get out of the vehicle without assistance. *Id.* at 6.

Officer Scatena confirmed Officer Mollo's testimony, stating that, in response to questions, Appellant "like mumble[d]. But we couldn't understand what he was saying." *Id.* at 21. During cross-examination, Officer Scatena reiterated that Appellant, "was either speaking a different language or there was stuff coming out of his mouth. It was not words." *Id.* at 23-24.

Both police officers affirmed "the goal was to try to identify this guy and [they] could not find anything where [they] looked that did identify him. … [They ran the license] plates … and [it] didn't come back to him either." ***Id.*** at 22; ***see also id.*** at 14-15. Both police officers testified as to the importance of identifying an individual who is in medical distress. ***Id.*** at 18-19, 22-24. The suppression court credited their testimony, finding Appellant was "incapacitated." ***Id.*** at 36. The court specifically held the purpose of the search was "to ascertain what was happening." ***Id.*** at 37. We have no basis to disturb these credibility and factual findings. ***Smith***, 164 A.3d at 1257; ***Blasioli***, 685 A.2d at 157.

Appellant does not address ***Johnson*** and ignores that it created an exception to the normal probable cause analysis. ***See*** Appellant's Brief at 13-20. Here, the uncontradicted testimony of both police officers was that they only searched Appellant's backpack because he was unable to give his name due to his incapacitated state, and they could not find any identification on his person or in the limited consensual search of his car. While Appellant was not unconscious, he was so incapacitated that it made no meaningful difference. "A search of one found in an unconscious condition is both legally permissible and highly necessary." ***Johnson***, ***supra*** at 569 (citation omitted). Thus, we agree with the suppression court that the instant search was permissible as an identity search because of the exigent circumstances of Appellant's medical emergency. ***See id.*** at 569, 572.

We are cognizant that in both *Johnson* and *Gatlos*, we addressed situations where it was not clear until after the searches that the medically compromised person had been involved in criminal activity. *See id.* at 566; *see also Gatlos*, 76 A.3d at 550-58. Thus, we emphasized that the "need to identify an unconscious victim" exigency exception was necessary because of the absence of probable cause. *Johnson*, 969 A.2d at 566. However, because the record demonstrates that police did not search Appellant's backpack for investigatory purposes, we find *Johnson* applicable.

The search was also permissible as a search incident to arrest. *Commonwealth v. Simonson*, 148 A.3d 792, 797 (Pa. Super. 2016). "The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both the person arrested and the area within his immediate control." *Id.* at 799 (citation and brackets omitted). The parameters of a search incident to arrest includes **containers** and clothing that are in the arrestee's possession at the time of his arrest. *See Commonwealth v. Guzman*, 612 A.2d 524, 526-27 (Pa. Super. 1992), *abrogated on other grounds by*, *Commonwealth v. Bell*, 645 A.2d 211 (Pa. 1994) (finding that police lawfully searched satchel carried by arrestee at time of arrest); *Commonwealth v. Trenge*, 451 A.2d 701, 710 (Pa. Super. 1982) (holding police lawfully searched shoulder bag that was on arrestee when he was arrested). A warrantless search incident to an arrest must be "substantially contemporaneous with the arrest and [is]

confined to the immediate vicinity of the arrest." ***Commonwealth v. Wright***, 742 A.2d 661, 665 (Pa. 1999) (quotation omitted).

Here, police found the backpack next to Appellant at the time of the search. N.T., 9/15/21, at 6-7. Moreover, the search took place immediately prior to the time Appellant was transported by ambulance, accompanied by Officer Mollo, to the hospital for treatment, and then promptly arrested by Officer Mollo once treatment was completed. ***Id.*** at 8. Accordingly, the warrantless search was proper for this reason as well. ***Guzman***. 612 A.2d at 526-27; ***Trenge***, 451 A.2d at 710.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/24/2023

- 13 -