J-S15007-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DENNELL HAIRSTON | : | |
| | : | |
| Appellant | : | No. 1699 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 5, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004157-2021

BEFORE: OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED JULY 17, 2024**

Appellant, Dennell Hairston, appeals from the judgment of sentence entered June 5, 2023.[1]  We affirm.

The evidence introduced at Appellant's March 31, 2023 suppression hearing established the following facts.  On April 23, 2021, Lieutenant Ronde Watson of the Philadelphia Police reported for duty.  At the beginning of Lieutenant Watson's shift, another officer informed him that there was an active arrest warrant for Appellant regarding illegal alcohol sales at Appellant's

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that Appellant purported to appeal from the March 31, 2023 order denying his pre-trial motion to suppress.  In a criminal action, however, an "appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted).  Accordingly the docket has been corrected to reflect that Appellant's appeal lies from the June 5, 2023 judgment of sentence.

J-S15007-24

place of business along the 6000 block of Elmwood Avenue in Philadelphia, Pennsylvania. Lieutenant Watson was familiar with Appellant due to previous interactions, most occurring as the result of neighborhood complaints that Appellant was operating a speakeasy. Accordingly, Lieutenant Watson drove to "the 2500 block of Millick Street," which "faces Elmwood" and waited to encounter Appellant. N.T. Suppression Hearing, 3/31/23, at 15. After approximately two hours, Lieutenant Watson observed Appellant "walk up the street carrying some water" and enter his residence. *Id.* A "short time later," Appellant exited his residence and got into his vehicle. *Id.* At that time, Lieutenant Watson initiated a traffic stop and called for backup. Officers John Arch and Anthony Crutosi subsequently arrived as backup and Lieutenant Watson approached Appellant's vehicle. Upon approach, Appellant rolled down his window and inquired into the reason for the stop. Lieutenant Watson responded that Appellant's vehicle was in violation of motor vehicle code "for having dark-tinted windows." *Id.* at 22. Then, Officers Arch and Crutosi asked Appellant to exit the vehicle, placed Appellant under arrest, searched his person and discovered a firearm in his front jacket pocket. *Id.* at 44.

Based upon the events that transpired on April 23, 2021, the Commonwealth charged Appellant with possession of a firearm prohibited, firearms not to be carried without a license, and carrying a firearm on the streets of Philadelphia.[2] On March 27, 2023, Appellant filed a pre-trial motion

_____

[2] 18 Pa.C.S.A. §§ 6105, 6106, and 6108, respectively.

- 2 -

seeking to suppress the firearm recovered from his person, claiming that the police officers "lacked any basis to believe that the person they arrested had a warrant out for his arrest" and, as such, the motor vehicle stop was initiated absent probable cause and in violation of Appellant's constitutional rights. Appellant's Motion to Suppress, 3/27/23, at 2. A suppression hearing was held on March 31, 2023, during which Lieutenant Watson, Officer Arch, and Officer Crutosi testified. The trial court denied Appellant's motion that day, and the matter proceeded to a waiver trial. Ultimately, the trial court found Appellant guilty of all charges. On June 5, 2023, the trial court sentenced Appellant to seven years' probation. This timely appeal followed.

Appellant raises the following issue on appeal:

> Whether the trial court abused its discretion in denying Appellant's pre-trial motion to suppress physical evidence in finding there was reasonable suspicion and/or probable cause to stop, detain, arrest, and subsequently search Appellant's person?

Appellant's Brief at 3 (superfluous capitalization omitted).

Appellant argues that the trial court erred in denying his motion to suppress. More specifically, Appellant claims that Lieutenant's Watson's failure to "independently corroborate/verify Appellant's arrest warrant . . . vitiate[s] the constitutional required reasonable suspicion or probable cause for the stop." Appellant's Brief at 10. Based upon the foregoing, Appellant contends that the "firearm recovered from Appellant's [person] should have been suppressed as fruits of [his] illegal seizure." *Id.* at 18.

When reviewing a challenge to an order that denied suppression, our standard of review is

> limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the Commonwealth a as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the [trial court's legal conclusions] are subject to plenary review.

*Commonwealth v. Smith*, 164 A.3d 1255, 1257 (Pa. Super. 2017) (citation omitted and formatting altered). "With respect to a suppression court's factual findings, 'it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented.'" *Commonwealth v. Heidelberg*, 267 A.3d 492, 499 (Pa. Super. 2021) (*en banc*) (citation omitted).

"A lawful arrest must be supported by probable cause." *Id*.

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the [stop], and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only

- 4 -

a probability, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (citation omitted). If officers have probable cause to arrest an individual, the "officers [are] also authorized to search him incident to that arrest or immediately prior to placing him under arrest." ***Commonwealth v. Young***, 162 A.3d 524, 529 (Pa. Super. 2017).

Herein, Lieutenant Watson explained at the suppression hearing that he and Appellant "knew one another from prior encounters." Trial Court Opinion, 9/20/23, at 4. More specifically, Lieutenant Watson stated that he had multiple conversations with Appellant after receiving complaints that Appellant was operating a speakeasy. N.T. Suppression Hearing, 3/31/23, at 13-14. Per Lieutenant Watson, these conversations occurred inside Appellant's "place of business" and included discussions wherein Lieutenant Watson explained to Appellant what "he needed to do . . . to make the building legal." ***Id.*** at 14-15. In addition, Lieutenant Watson testified that he received information at the beginning of his shift regarding an active arrest warrant for Appellant for illegal alcohol sales, which would not issue absent probable cause. ***See*** 234 Pa. Code § 513(B)(2) ("No arrest warrant shall issue but upon probable cause supported by one or more affidavits sworn to before the issuing authority in person or using advanced communication technology."). Thus, the mere fact that Lieutenant Watson did not, himself, review or possess the warrant is of no consequence as this Court has previously held that "[t]he fact

that an arrest was made by [a] police officer who had knowledge of [an] arrest warrant, but did not have physical possession of it at [the] time of [the] arrest [does] not affect its validity." **Heidelberg**, 267 A.3d at 501 (quotation omitted). **See also id.**, at 501-502 (holding that "Erie police dispatch, a reliable source, confirmed the existence of an Erie County sheriff's warrant for [the a]ppellant's arrest" and, as such, "the suppression court properly found, under the totality of the circumstances, that the police officers had probable cause to arrest him"); **Commonwealth v. Bumbarger**, 231 A.3d 10, 16 (Pa. Super. 2020) (holding that the trooper's stop and arrest was lawful because he was aware that the appellant had "active arrest warrants").

Based upon the foregoing, we hold that the trial court correctly denied Appellant's motion to suppress in view of "Lieutenant Watson['s] knowledge of the existence of the warrant [and history of Appellant's involvement in the unlawful sale of alcoholic beverages,] combined with his personal knowledge of [] Appellant's identity[,] created sufficient probable cause to seize . . . Appellant." Trial Court Opinion, 9/20/23, at 4. Since we have determined that Appellant was subject to a lawful arrest pursuant to a valid warrant, we further conclude that the subsequent search of Appellant's person was constitutionally permissible as a search incident to lawful arrest. **See Commonwealth v. Williams**, 305 A.3d 89, 97 (Pa. Super. 2023) ("The search incident to arrest exception allows arresting officers, in order to prevent the arrestee from obtaining a weapon or destroying evidence, to search both

the person arrested and the area within his immediate control.") (quotation omitted).

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  7/17/2024